Misty Marie HOWELL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–0606–CR–241.

Court of Appeals of Indiana.

Dec. 27, 2006.

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Misty Marie Howell appeals her sentence for reckless homicide as a class C felony.[1] Howell raises two issues, which we restate as:

I. Whether Howell's sentence violates *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004);

II. Whether the trial court abused its discretion in sentencing Howell; and

III. Whether Howell's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We reverse and remand.

The relevant facts follow. On February 20, 2004, K.H. died, and Howell was indicted for neglect of a dependent as a class A felony and reckless homicide as a class C felony.[2] Howell pleaded guilty to reckless

---

1. Ind.Code § 35–42–1–5 (2004).

2. A grand jury indicted Howell. On appeal, we were provided with unsealed originals of the transcript and exhibits of the grand jury proceedings. It is unclear why we were provided with these documents as the grand jury proceedings are not relevant to any issue on appeal and these documents were not part of the guilty plea or sentencing record. We note that the general rule regarding grand jury transcripts is that they be kept secret. Ind. Code § 35–34–2–4(i); *Hinojosa v. State,* 781

N.E.2d 677, 680 (Ind.2003). In fact, it is a criminal offense to "knowingly and intentionally" disclose information acquired in a grand jury proceeding unless compelled by law. Ind.Code § 35–34–2–10(a); *Hinojosa,* 781 N.E.2d at 680. Under Ind.Code § 35–34–2–10(b), "[t]he transcript of testimony of a witness before a grand jury may be produced only":

(1) for the official use of the prosecuting attorney; or

(2) upon order of:

homicide as a class C felony, and the State dismissed the remaining charge. Howell admitted that "on or about February 20, 2004, [she] did recklessly kill [K.H.]. . . ." Appellant's Appendix at 13; Transcript at 5–6.

At Howell's sentencing hearing on April 11, 2006, her counsel argued that Howell had sought, received, and successfully completed drug treatment to overcome her methamphetamine addiction. Her counsel also stated:

> As all cases like this are, it's a tragedy. The child was sleeping with her when he died. The police found [K.H.] with his face into the cushions. The initial opinion of the doctor was that this was death by affixation [sic]. It did do blood tests and he had a toxic, not a lethal but a toxic level of pseudoephedrine in this [sic] system. The therapeutic level, I think tops out, and this is in one of the reports, tops out about 900 or so nanograms per milliliter. He had a level of 3000 and something nanograms per milliliter according to the materials that we've included in the proffer to the Court. The lethal level, not the toxic level where you start having problems, but the lethal level is 19,000 nanograms per milliliter and I think a fair appraisal of the evidence would indicate that was probably a combination of sleeping with the child on a couch and constricting the child's airways and the overmedicating the child with pseudoephedrine which caused the death.

Transcript at 22. The sentencing hearing was continued by agreement of the parties so that the trial court judge could talk to the trial court judge presiding over the CHINS case concerning Howell's children.

(A) the court which impaneled the grand jury;
(B) the court trying a case upon an indictment of the grand jury; or

At the final sentencing hearing on May 12, 2006, the State presented additional testimony from Officer Mark Decamps of the Evansville Police Department. Officer Decamps testified that on April 19, 2006, after the sentencing hearing had been continued, he had initiated a traffic stop on Howell due to speeding. Howell did not have a valid driver's license and "seemed to be really nervous." *Id.* at 31. Officer Decamps arrested Howell for driving while suspended and performed an inventory of her vehicle. In Howell's purse and vehicle, Officer Decamps discovered several boxes of pseudoephedrine-based cold tablets. Howell informed Officer Decamps that she had bought the pills to sell to a methamphetamine producer for $20 per box.

The trial court stated that the evidence concerning the April 19, 2006, incident would not be considered as an aggravator. Specifically, the trial court stated:

> However the issue that the Court had taken this additional time to consider, specifically as I recall at the Defendant's request, was whether or not there was a genuine effort on behalf of the Defendant to rehabilitate herself and whether her drug participation and the drug counseling that had been available through CHINS Court and under Judge Niemeier's supervision had in fact effectuated a genuine rehabilitation on her part. I think the evidence that the State presented today goes not to establish aggravating circumstance but to prove or disprove the existence of a mitigating circumstance and so it will be considered for that. .

*Id.* at 39. The trial court then found three aggravating factors: (1) Howell's criminal

(C) a court trying a prosecution for perjury;
but only after a showing of particularized need for the transcript.

history; (2) the victim, K.H., was less than twelve years of age; and (3) Howell was in a position of trust with K.H. because Howell was K.H.'s mother. The trial court found no mitigating circumstances. The trial court sentenced Howell to the maximum sentence of eight years in the Indiana Department of Correction.

## I.

■ The first issue is whether Howell's sentence violates *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).[3] On June 24, 2004, the United States Supreme Court decided *Blakely,* which held that, other than the fact of a prior conviction, facts supporting an enhanced sentence must be admitted by the defendant or found by a jury. *Blakely,* 542 U.S. at 303–304, 124 S.Ct. at 2537; *Cotto v. State,* 829 N.E.2d 520, 527 n. 2 (Ind.2005). In *Smylie v. State,* the Indiana Supreme Court held that *Blakely* was applicable to Indiana's sentencing scheme and required that "the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." 823 N.E.2d 679, 686 (Ind.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005). The Indiana Supreme Court later noted that "*Blakely* and the later case *United States v. Booker*[, 543 U.S. 220, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005),] indicate that there are at least four ways that meet the procedural requirements of the Sixth Amendment in which such facts can be found and used by a court in enhancing a sentence." *Mask v. State,* 829 N.E.2d 932, 936 (Ind.2005).

[A]n aggravating circumstance is proper for *Blakely* purposes when it is: 1) a fact of prior conviction; 2) found by a jury beyond a reasonable doubt; 3) admitted to by a defendant; or 4) stipulated to by the defendant, or found by a judge after the defendant consents to judicial fact-finding, during the course of a guilty plea in which the defendant has waived his *Apprendi* rights.

*Id.* at 936–937 (citing *Trusley v. State,* 829 N.E.2d 923, 925 (Ind.2005)). According to Howell, each of the three aggravators used to enhance her sentence violates *Blakely.*

### A. *Prior Criminal History.*

Howell concedes that "[t]he *Blakely* opinion clearly states that prior criminal convictions need not be submitted to a jury for proof beyond a reasonable doubt." Appellant's Brief at 7. However, according to Howell, the subsequent decision of *Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), "signaled the end to this exception." *Id.*

In *Almendarez–Torres v. United States,* the Supreme Court upheld a federal law allowing a judge to impose an enhanced sentence based on prior convictions not alleged in the indictment. 523 U.S. 224, 242–247, 118 S.Ct. 1219, 1230–1233, 140 L.Ed.2d 350 (1998). The Supreme Court reaffirmed this holding in its subsequent decisions of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Apprendi,* the Court held that "[o]ther than the fact of a prior conviction,

---

**3.** Indiana's sentencing scheme was amended effective April 25, 2005, to incorporate advisory sentences rather than presumptive sentences. *See* Ind.Code §§ 35–38–1–7.1, 35–50–2–1.3. Howell committed her offenses prior to the effective date and was sentenced on May

12, 2006. Neither party argued to the trial court or on appeal that the amended sentencing statutes should be applied. Consequently, we will apply the version of the sentencing statutes in effect at the time Howell committed her offense.

any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–63. In *Blakely*, the Court clarified "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303, 124 S.Ct. at 2537. *Blakely* did not disturb *Apprendi*'s exception for prior convictions.

Then, in *Shepard*, the Supreme Court considered what sources a trial court may properly consult in determining whether a prior conviction contained the necessary elements to serve as a predicate violent felony under the Armed Career Criminal Act ("ACCA"). *Shepard*, 544 U.S. at 15–17, 125 S.Ct. at 1257; *see Trusley*, 829 N.E.2d at 926. A plurality of the Court explained that, while a dispute over whether a burglary was a violent felony for purpose of the ACCA could be "described as a fact about a prior conviction, it [was] too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* [*v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311, (1999)] and *Apprendi* to say that *Almendarez–Torres* clearly authorizes a judge to resolve the dispute." *Id.* at 25, 125 S.Ct. at 1262.

In a concurring opinion, Justice Thomas noted:

[T]he plurality today refines the rule of *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and further instructs district courts on the evidence they may consider in determining whether prior state convictions are § 924(e) predicate offenses. *Taylor* and today's decision thus explain to lower courts how to conduct factfinding that is, according to the logic of this Court's intervening precedents, unconstitutional in this very case. The need for further refinement of *Taylor* endures because this Court has not yet reconsidered *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which draws an exception to the *Apprendi* line of cases for judicial factfinding that concerns a defendant's prior convictions. *See Apprendi, supra,* at 487–490, 120 S.Ct. 2348, 147 L.Ed.2d 435.

*Almendarez–Torres*, like *Taylor*, has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez–Torres* was wrongly decided. *See* 523 U.S., at 248–249, 118 S.Ct. 1219 (Scalia, J., joined by Stevens, Souter, and Ginsburg, JJ., dissenting); *Apprendi, supra,* at 520–521, 120 S.Ct. 2348 (Thomas, J., concurring). The parties do not request it here, but in an appropriate case, this Court should consider *Almendarez–Torres'* continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of *Almendarez–Torres*, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements." *Harris v. United States*, 536 U.S. 545, 581–582, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (Thomas, J., dissenting).

544 U.S. at 27–28, 125 S.Ct. at 1263–1264 (Thomas, J. concurring).

■ Following *Shepard*, we noted that "*Shepard* left open the question of the continued viability of the prior conviction exception as first articulated in *Almendarez–Torres* ... and incorporated into *Apprendi* ... and *Blakely* ...." *Stokes v. State*, 828 N.E.2d 937, 942 n. 10 (Ind.Ct.

App.2005), *trans. denied, cert. denied,* ——U.S. ——, 126 S.Ct. 1623, 164 L.Ed.2d 339 (2006). Howell now asks that we hold, based upon *Shepard,* that the State must establish a defendant's criminal record beyond a reasonable doubt to a jury. However, other courts have declined to do as Howell asks. *See, e.g., United States v. Browning,* 436 F.3d 780 (7th Cir.2006) (holding that *Shepard* did not overrule *Almendarez–Torres* and "the continued authority of *Almendarez–Torres* is not for us to decide"), *cert. denied,* —— U.S. ——, 126 S.Ct. 2908, 165 L.Ed.2d 933 (2006). The United States Supreme Court has not explicitly overruled *Almendarez–Torres* or the prior conviction exception. Consequently, we must follow *Almendarez–Torres,* and Howell's argument fails. The trial court's use of Howell's prior convictions as an aggravating factor did not violate *Blakely.*

### B. *K.H.'s age.*

According to Howell, the trial court erred by considering K.H.'s age as an aggravator because this fact was not submitted to a jury and proven beyond a reasonable doubt and she did not admit to this fact. As noted above, there are at least four ways that meet the procedural requirements of the Sixth Amendment in which such facts can be found and used by a court in enhancing a sentence. *Mask,* 829 N.E.2d at 936.

> [A]n aggravating circumstance is proper for *Blakely* purposes when it is: 1) a fact of prior conviction; 2) found by a jury beyond a reasonable doubt; 3) admitted to by a defendant; or 4) stipulated to by the defendant, or found by a judge after the defendant consents to judicial fact-finding, during the course of a guilty plea in which the defendant has waived his *Apprendi* rights.

*Id.* at 936–937. The only issue here is whether Howell admitted that K.H. was less than twelve years of age.

■ While it was obviously clear to the trial court and the parties that K.H. was seven weeks old at the time of his death, we must examine only the record provided to us to determine whether Howell admitted this fact.[4] Although Howell testified at her sentencing hearing, she was not asked K.H.'s age and never mentioned the fact that K.H. was an infant. None of the documents submitted by Howell to the trial court at the sentencing hearing or even the presentence investigation report mention K.H.'s age. Further, although Howell's counsel referred to K.H. as a child during the sentencing argument, he did not admit that K.H. was less than twelve years of age. Transcript at 22; *Cf. Kincaid v. State,* 839 N.E.2d 1201, 1205 (Ind.

---

**4.** The State contends that Howell admitted to her position of trust with K.H. and K.H.'s age during the guilty plea hearing. The State relies upon the following testimony:

> THE COURT: Count I of the indictment charges the crime of neglect of a dependent. That is a class A felony. That charge alleges that on or about February the 20th of 2004, that you did knowingly place a dependent child, that is [K.H.], a person under the age of fourteen that being seven weeks old, born December the 23rd, 2003, in a situation that endangered the life or health of that dependent child which resulted in death of the child in that you at the

time were at least eighteen years of age, that is you were twenty-one years of age, having been born on September the 4th, 1982 and at the time you had the care of that dependent child. Do you understand that charge?
> [HOWELL]: Yes.

Transcript at 4–5. However, Howell did not admit to the facts contained in the trial court's question. Rather, Howell just admitted that she understood the charge. This portion of the guilty plea hearing cannot be used to justify using K.H.'s age or Howell's position of trust as aggravators.

Ct.App.2005) (holding that the trial court properly considered the fact that the victim was an infant where, although the defendant did not specifically testify as to the victim's age at the trial, the defendant did testify that he was holding and feeding the victim with a bottle at the time of the injuries). We must conclude that Howell did not admit that K.H. was less than twelve years of age, and the trial court's use of K.H.'s age as an aggravating factor violated *Blakely*.

## C. *Position of Trust.*

■ According to Howell, the trial court also erred by considering her position of trust as an aggravator because this fact was not submitted to a jury and proven beyond a reasonable doubt and she did not admit to this fact. Again, it was obviously clear to the trial court and the parties that K.H. was Howell's son. However, although Howell testified at her sentencing hearing, she was not asked if K.H. was her son. None of the documents submitted by Howell to the trial court at the sentencing hearing mention that K.H. was Howell's son. Appellant's Appendix at 86. During sentencing, Howell's counsel admitted that Howell was sleeping with the child when he died but did not admit that the child was Howell's son.

The sole reference to K.H. being Howell's son comes in the presentence investigation report. In the "Defendant's Version," the PSI provides that "[t]he defendant stated she fell asleep with her son and when she woke up he had passed away." Appellant's Appendix at 86. At the sentencing hearing, Howell admitted that the PSI was accurate. In *Ryle v. State*, the Indiana Supreme Court held that "using a defendant's failure to object to a presentence report to establish an admission to the accuracy of the report implicates the defendant's

Fifth Amendment right against self-incrimination." 842 N.E.2d 320, 323 n. 5 (Ind.2005), *cert. denied,* ⸺ U.S. ⸺, 127 S.Ct. 90, 166 L.Ed.2d 63 (2006). Here, Howell did more than fail to object; rather, Howell confirmed the accuracy of the PSI. We conclude that Howell admitted that K.H. was her son, and the trial court's use of Howell's position of trust as an aggravator did not violate *Blakely*. *See, e.g., Kincaid,* 839 N.E.2d at 1205 (holding that the trial court properly considered the defendant's position of trust because he admitted during his trial testimony that the victim was his son).

## D. *April 19, 2006, Traffic Stop.*

■ Howell argues that the trial court improperly used the facts related to the April 19, 2006, traffic stop "to justify a sentence above the presumptive term." Appellant's Brief at 11. *Blakely* held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Blakely,* 542 U.S. at 303–304, 124 S.Ct. at 2537.

■ Here, the trial court specifically stated that it was not considering this incident as an aggravating factor. Rather, Howell had asked the trial court to consider her drug rehabilitation as a mitigating factor. The trial court used the April 19, 2006, incident as evidence to disprove Howell's rehabilitation as a mitigating factor. Transcript at 39. The trial court specifically did not use this fact to increase Howell's sentence above the presumptive sentence. Consequently, the trial court's use of the April 19, 2006, incident did not violate *Blakely*.

In summary, we conclude that the trial court's use of Howell's criminal history and position of trust as aggravators did not

violate *Blakely,* and the trial court's use of the April 19, 2006, incident in sentencing Howell did not violate *Blakely.* However, the trial court's use of K.H.'s age as an aggravating factor violated *Blakely.*

## II.

 The next issue is whether the trial court abused its discretion in sentencing Howell. Sentencing decisions rest within the discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Smallwood v. State,* 773 N.E.2d 259, 263 (Ind.2002). An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Pierce v. State,* 705 N.E.2d 173, 175 (Ind.1998).

Although the trial court's use of Howell's prior convictions as an aggravating factor did not violate *Blakely,* Howell also argues that her criminal history did not qualify as a significant aggravator. Howell's criminal history consists of five misdemeanor convictions. In 1999, Howell was found guilty of operating a vehicle having never received a license as a class C misdemeanor. In 2001, she was found guilty of conversion as a class A misdemeanor. In 2002, she was found guilty of failure to stop after an accident as a class C misdemeanor and operating a vehicle having never received a license as a class C misdemeanor. In 2004, Howell was again found guilty of failure to stop after an accident as a class C misdemeanor. Although Howell informed the probation department that she had a juvenile record, this information was not verified in the PSI.

 The Indiana Supreme Court has emphasized that "the extent, if any, that a sentence should be enhanced [based upon prior convictions] turns on the weight of an individual's criminal history." *Duncan v. State,* 857 N.E.2d 955, 959 (Ind.2006).

"This weight is measured by the number of prior convictions and their gravity, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on a defendant's culpability." *Id.* (quoting *Bryant v. State,* 841 N.E.2d 1154, 1156 (Ind.2006)). "[T]he significance of a defendant's prior criminal history in determining whether to impose a sentence enhancement will vary 'based on the gravity, nature and number of prior offenses as they relate to the current offense.'" *Prickett v. State,* 856 N.E.2d 1203, 1209 (Ind.2006) (quoting *Ruiz v. State,* 818 N.E.2d 927, 929 (Ind.2004)).

Recently, the Indiana Supreme Court addressed a similar argument in *Duncan.* There, the defendant was sentenced to sixty-two years in prison with ten years suspended for felony murder after giving methadone to a two-year-old child resulting in his death. 857 N.E.2d at 957. The defendant had a criminal history consisting of convictions for misdemeanor driving under the influence, felony disrupting public services, and class C misdemeanor contributing to the delinquency of a minor. *Id.* at 959. The court concluded that her "prior convictions and charges were neither sufficiently weighty or similar to the current offense to justify enhancing the sentence" and determined that an appropriate sentence was forty-five years. *Id.* at 960.

On the same day as the court decided *Duncan,* it also decided *Prickett.* There, the defendant was sentenced to forty years for his class A child molesting conviction. 856 N.E.2d at 1205. One of the aggravators considered by the trial court was the defendant's criminal history, which consisted of juvenile adjudications for incorrigibility, burglary, and theft and adult misdemeanor convictions for illegal consumption of alcohol by a minor, mischief, and conversion. *Id.* at 1207–1208. The court held

that "[w]hile recognizing that a defendant's criminal history can be a valid aggravating circumstance, we find that it is of little weight in the instant case." *Id.* at 1209. The court concluded that the defendant's prior criminal history "was neither sufficiently similar to the instant offense nor weighty enough to warrant consideration as an aggravating factor in enhancing his Class A felony sentence." *Id.* The court reduced the defendant's sentence to the presumptive sentence of thirty years. *Id.* at 1210.

Based upon *Duncan* and *Prickett*, we must conclude that Howell's criminal history is not a significant aggravating factor. Howell's prior misdemeanor convictions are not sufficiently weighty or similar to the current offense to justify enhancing the sentence. The prior convictions are of a different character than the instant offense and do not approach the seriousness of this offense. Consequently, the trial court abused its discretion by using Howell's criminal history as an aggravating factor. *See, e.g., Duncan,* 857 N.E.2d at 960–61; *Prickett,* 856 N.E.2d at 1209.

Of the three aggravators found by the trial court here, we are left with one valid aggravator, Howell's position of trust. "Where we find an irregularity in a trial court's sentencing decision, we have the option to remand to the trial court for a clarification or new sentencing determination, to affirm the sentence if the error is harmless, or to reweigh the proper aggravating and mitigating circumstances independently at the appellate level." *Baber v. State,* 842 N.E.2d 343, 345 (Ind.2006), *cert. denied,* — U.S. —, 127 S.Ct. 128, 166 L.Ed.2d 95 (2006). We elect the first option here and remand to the trial court for a new sentencing hearing. Given our resolution of this issue, we need not address Howell's argument that her sentence is inappropriate in light of the nature of the offense and the character of the offender.

For the foregoing reasons, we reverse Howell's sentence for reckless homicide as a class C felony and remand for proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, C.J., and MATHIAS, J., concur.